

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JANICE REIMANN | * | CIVIL ACTION NO. |
| | * | |
| VERSUS | * | |
| | * | SECTION " "  01-3159 |
| ENMON ENTERPRISES, INC. | * | |
| d/b/a JANI-KING OF NEW ORLEANS | * | MAGISTRATE " "   N |

## COMPLAINT AND JURY DEMAND

NOW INTO COURT, through undersigned counsel, comes plaintiff, Janice Reimann ("Ms. Reimann"), for complaint against Enmon Enterprises, Inc. d/b/a Jani-King of New Orleans ("Enmon Enterprises"), stating that the following causes of action are based upon the defendant's violations of Federal Law, via 42 USC § 1981, as amended, violations of the Louisiana Employment Discrimination Law, and La. R.S. 52:2256, *et seq*. Plaintiff shows that this Complaint and Jury Demand is being filed as a substitute Complaint and Jury Demand, and alleges as follows:

### I. PARTIES

1.

Plaintiff, Ms. Reimann, is a citizen of the State of Louisiana, and of the United



States, and resides within the confines of the Eastern District.

2.

Defendant, Enmon Enterprises, is, upon information and belief, a domestic corporation authorized to do and doing business within the confines of the Eastern District of Louisiana.

## II.  JURISDICTION AND VENUE

3.

Ms. Reimann asserts that jurisdiction is proper in this Honorable Court pursuant to federal question jurisdiction, 28 U.S.C. § 1331, as she is suing pursuant to 42 USC § 1981, as amended, and also violations of Louisiana law pursuant to this Honorable Court's supplemental jurisdiction.

4.

Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(a).

## III.  FACTS AND ALLEGATIONS

5.

Ms. Reimann was hired by defendant as a Building Consultant (Sales Representative) in approximately May of 1999.

6.

Ms. Reimann performed her duties and met her sales goals in a more than satisfactory manner.

7.

Upon information and belief, defendant incorporates a corrective action program

with its employees in order to bring the employee's performance in line with company expectations. Specifically, upon information and belief, defendant's corrective action program includes four (4) steps as follows: 1) verbal warning; 2) written warning; 3) probation - where an employee is placed on a written performance improvement plan; and 4) termination - if the previous steps of corrective action have not brought the employee's performance or behavior in line with company expectations.

8.

Other than a memorandum dated May 8, 2001, which unfairly notified Ms. Reimann that she was terminated, she never received any notification of deficient performance or improper conduct - either in writing or verbally.

9.

In any event, at all material times, Ray Ranger ("Mr. Ranger") was either defendant's Regional Director or the Vice President. Mike Seiler ("Mr. Seiler") was plaintiff's Regional Director just before her termination. Her immediate supervisor was Harold "Rocky" Blum ("Mr. Blum").

10.

Mr. Ranger was Regional Director until he became Vice President when Mr. Seiler became the Regional Director in early May of 2001. However, in the weeks prior to that time, Mr. Seiler spent time in the office where plaintiff worked.

11.

Defendant is engaged in the business of commercial cleaning services. Upon information and belief, defendant sells franchises for Jani-King cleaning services and

interfaces with the franchisees in initiating and coordinating commercial cleaning contracts.

12.

Upon information and belief, defendant's contractual relationship with its franchisees requires defendant to secure business (cleaning contracts) for its franchisees and then award the contracts to franchisees.

13.

In approximately mid April of 2001 (about three (3) weeks before Mr. Seiler was to formally become the Regional Director), plaintiff was having a conversation with Mr. Seiler about how he was going to handle it when franchisees came to defendant's offices looking for accounts. During that conversation, Mr. Seiler made statements that indicated that he had a racially discriminatory attitude against African-American franchisees and that he intended to adversely impact the way new business was allotted to African-American franchisees.

14.

Plaintiff was very concerned about these statements and about one (1) week later, plaintiff complained to Gaynell Koper ("Ms. Koper"), the Office Manager. Specifically, Ms. Reimann advised Ms. Koper of specific statements made by Mr. Seiler that plainly indicated that: (1) he had a discriminatory attitude toward African-American franchisees and was against them due to their race; and, (2) that he would take direct and/or indirect action to selectively and unfairly impact the allotment of business to the disadvantage of African-American franchisees solely because of their race.

15.

Also, at this time, plaintiff advised Ms. Koper of statements made by Mr. Blum in conversations with her (plaintiff) regarding how defendant awarded new accounts to franchise owners. Plaintiff advised Ms. Koper of a specific statement made by Mr. Blum that obviously indicated that: (1) he too had a discriminatory attitude toward African-American franchisees and was against them due to their race; and, (2) he would favor management policies and/or management influence to treat African-American franchisees adversely due to their race.

16.

Ms. Koper stated to plaintiff that Ms. Koper was communicating with Mr. Ranger about the issues plaintiff raised.

17.

Additionally, one (1) or two (2) days prior to her termination, plaintiff complained to Ms. Koper that Mr. Blum frequently used language offensive to women, which was sexually vulgar and that created a hostile work environment.

18.

Again, Ms. Koper advised plaintiff that she was in contact with Mr. Ranger about such statements.

19.

Ms. Reimann contends that the above referenced complaints to Ms. Koper about racial discrimination constituted protected activity pursuant to 42 USC § 1981, as amended, as she possessed the reasonable belief that federal law prohibited racial

discrimination against franchisees as alleged herein.

20.

Ms. Reimann alleges that her complaints regarding vulgar language and language offensive to women also constituted protected activity under the Louisiana Employment Discrimination Law, and La. R.S. 52:2256, *et seq.*, as she complained with the reasonable belief that such conduct violated the law.

21.

Plaintiff requested that these matters be investigated and that suitable remedial measures be implemented.

22.

Plaintiff alleges that absolutely no reasonable investigation was conducted nor were any remedial measures instituted during her employment.

23.

Instead, defendant embarked upon a concerted effort to unfairly terminate plaintiff in retaliation for her complaints about racial discrimination and/or her complaints about sexually harassing and vulgar language in the workplace.

24.

Additionally, defendant's owner, Tom Enmon ("Mr. Enmon"), made statements indicating that he too had a bias against women, including a statement connected with plaintiff's potential participation in a bid for cleaning services with the Lafourche School Board in approximately October of 2000. At that time, Mr. Enmon told plaintiff that he did not want her to speak at the School Board Meeting because "it's a man's world."

25.

Plaintiff specifically alleges that she adequately performed her job and met all of her sales' goals.

26.

Plaintiff specifically alleges further that her sales' performance, compared to similarly situated male salesmen, was equal to or greater than the male salesmen's job performance.

27.

Upon information and belief, defendant has six (6) other Building Consultants (sales representatives) in its offices in: Baton Rouge, Hattiesburg, Jackson and Mobile - and they are all men.

28.

Additionally, upon information and belief, defendant tracks the performance of its Building Consultants with a measurement known as the "closing ratio." Plaintiff specifically alleges that her closing ratio was consistently above her quota, and that her closing ratios were above or equal to the closing ratios of other similarly situated male Building Consultants; yet, upon information and belief, those male Building Consultants have not been disciplined in any manner.

29.

Plaintiff was terminated on or about May 9, 2001, allegedly for her "inability to effectively manage territory, prepare bids and create urgency," but this allegation has absolutely no reasonable non-discriminatory basis in fact and/or reality.

30.

Plaintiff specifically alleges that defendant's allegations of deficient performance were either blatantly untrue, utterly unfair or, to the extent any problems occurred with her performance, plaintiff alleges that other similarly situated employee, and managers, who did the same or similar things, were not terminated. Thus, plaintiff contends that, but for her gender and/or her complaints concerning prohibited discrimination, she would not have been terminated.

31.

Accordingly, plaintiff alleges that the reason(s) given for her termination were a pretext to gender discrimination and/or retaliation because she complained about language that was offensive to women (as prohibited by the Louisiana Employment Discrimination Act, and La. R.S. 51:2256, *et seq.*), and/or because she complained about racial discrimination against franchisees (as prohibited by 42 USC § 1981).

32.

Plaintiff also alleges that defendant failed to properly investigate her complaints and failed to implement proper remedial measures as required by Federal law and Louisiana law.

33.

At all material times, Enmon Enterprises is liable for the conduct of its employees, agents and/or supervisors described herein under the Doctrine of Respondeat Superior.

## **COUNT ONE**

34.

Due to the above and foregoing allegations, defendant is liable unto Ms. Reimann pursuant to 42 USC § 1981, as amended, which prohibits retaliation against an employee who complains about racial discrimination against other employees and/or who complains about racial discrimination against other persons who may have a contractual interest with the employer, and as such, defendant is liable unto Ms. Reimann for:

- A. Back-pay including benefits;
- B. Front-pay including benefits;
- C. Mental anguish;
- D. Humiliation/embarrassment;
- E. Loss of enjoyment of life;
- F. Medical expenses;
- G. Prejudgment interest;
- H. Punitive Damages;
- I. Attorney's fees;
- J. Costs of these proceedings; and
- K. Injunctive relief enjoining defendant from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently restraining these violations of Louisiana Law and Federal law.

## COUNT TWO

35.

Alternatively, due to the above and foregoing allegations, defendant is liable unto Ms. Reimann pursuant to the Louisiana Employment Discrimination Law, and La. R.S. 52:2256, *et seq*, which prohibits gender discrimination and/or retaliation against an employee who complains about prohibited sexually harassing language, and as such, defendant is liable unto Ms. Reimann for:

- A. Back-pay including benefits;
- B. Front-pay including benefits;
- C. Mental anguish;
- D. Humiliation/embarrassment;
- E. Loss of enjoyment of life;
- F. Medical expenses;
- G. Prejudgment interest;
- H. Attorney's fees;
- I. Costs of these proceedings; and
- J. Injunctive relief enjoining defendant from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently restraining these violations of Louisiana Law and Federal law.

36.

Ms. Reimann specifically pleads her right to recover punitive damages from defendant under Federal law as she alleges that defendant's prohibited conduct was in

reckless disregard of her federally protected rights.

37.

Ms. Reimann reserves her right to supplement and amend this Complaint upon the discovery of additional facts.

38.

Ms. Reimann shows amicable demand to no avail.

## V. JURY DEMAND

39.

Ms. Reimann requests trial by jury.

WHEREFORE, plaintiff, Janice Reimann, prays that defendant, Enmon Enterprises, Inc. d/b/a Jani-King of New Orleans, be duly cited to appear and answer this Complaint and Jury Demand and, after due proceedings and legal delays, there be judgment herein in favor of your plaintiff, and against defendant, as detailed in the foregoing Complaint and Jury Demand and in an amount reasonable in the premises, together with legal interest from the date of judicial demand, all costs of these proceedings, reasonable attorney's fees, punitive damages and any and all general and

equitable relief deemed appropriate by this Honorable Court under the circumstances.

Respectfully submitted,

**ARRUEBARRENA & McNAMARA**

_____
James L. Arruebarrena (#22235) T.A.
Dwight L. McNamara (#22521)
3621 Ridgelake Dr., Suite 300
Metairie, Louisiana 70002
Telephone (504) 828-5595

Attorneys for Janice Reimann


Service via Summons

**Enmon Enterprises, Inc. d/b/a Jani-King of New Orleans**
through its agent for service of process
Mr. Thomas A. Enmon
160 James Dr., E.
Suite B
St. Rose, Louisiana 70087-9662